**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| KIMBERTON HEALTHCARE CONSULTING, INC. | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| PRIMARY PHYSICIANCARE, INC. | : | NO. 11-4568 |

**MEMORANDUM RE: MOTION TO DISMISS AND FOR A MORE DEFINITE STATEMENT**

**Baylson, J.** **December 6, 2011**

## I. Introduction

This dispute arises from a confidentiality agreement (the "Confidentiality Agreement") and a Consulting Services Partner Agreement (the "Consulting Agreement") executed by Plaintiff Kimberton Healthcare Consulting, Inc. d/b/a DialysisPPO ("Plaintiff" or "DPPO") and Defendant Primary PhysicianCare, Inc. ("Defendant" or "PPC") in connection with discussions about a possible business relationship whereby DPPO would provide health plan consulting and management services to PPC's clients. DPPO brought this action against PPC, alleging that PPC unlawfully disclosed and misused confidential and proprietary information that DPPO conveyed to PPC during those discussions in breach of the contracts and in violation of Pennsylvania law. Presently before the Court is PPC's motion to dismiss for failure to state a claim and for a more definite statement pursuant to Rules 12(b)(6) and 12(e) of the Federal Rules of Civil Procedure.

## II. Factual and Procedural Background

DPPO is a Pennsylvania corporation that provides renal dialysis benefits consulting and related management services. (Cplt. ¶¶ 1-2.) PPC is a privately held medical management

company with headquarters in North Carolina. (Id. ¶ 3.) PPC provides benefit administration services for welfare benefit plans. (Id. ¶ 4.)

On October 24, 2007, in connection with talks about a possible business relationship, DPPO and PPC entered into the Confidentiality Agreement because DPPO proposed to disclose certain confidential and propriety information regarding its business to PPC. (Id. ¶ 7.) The Confidentiality Agreement designated certain confidential and propriety information, including "benefit plan language" and "renal dialysis benefit instrument combinations" developed by DPPO as "Confidential Information." (Id. ¶ 8.) The Confidentiality Agreement specified that the Confidential Information was to be considered propriety and confidential to DPPO and held in confidence by PPC. (Id.) Specifically, the Confidentiality Agreement provided that PPC would not disclose, publish, or otherwise reveal any Confidential Information received from DPPO to any other party, except with specific prior written authorization of DPPO. (Id. ¶ 9.) The Confidentiality Agreement also provided that PPC would not use the Confidential Information other than for the purposes of its business with DPPO. (Id. ¶ 10.)

On December 20, 2007, DPPO and PPC entered into the Consulting Agreement. (Id. ¶ 11.) In the Consulting Agreement, DPPO agreed to assist PPC's clients in reducing medical claims for renal dialysis service for self-funded health plan participants and beneficiaries with End Stage Renal Disease. (Id. ¶ 12, 22.) The Consulting Agreement prohibited PPC from disclosing any of DPPO's Confidential Information to PPC's clients until and unless the clients themselves had executed confidentiality agreements with DPPO. (Id. ¶ 13.) In the Consulting Agreement, PPC expressly acknowledged the confidential and propriety character of the Confidential Information. (Id. ¶ 14.) PPC also agreed not to use the Confidential Information to

develop or have a third party develop competing or similar services. (Id. ¶¶ 16, 21.)

According to DPPO, after the execution of the Consulting Agreement, PPC allegedly incorporated language similar to DPPO's Confidential Information in certain benefits plan documents while acting as a third-party administrator for a health plan without providing notice or compensation to DPPO for the use of the Confidential Information. (Id. ¶¶ 17-19.) PPC has allegedly begun offering its clients at no charge a dialysis cost containment program based on DPPO's Confidential Information. (Id. ¶ 20.)

On July 19, 2011, DPPO brought this diversity action against PPC, alleging various causes of action under Pennsylvania state law, including breach of contract (Count I), misappropriation of confidential and proprietary information (Count II), violation of the Pennsylvania Uniform Trade Secrets Act ("PUTSA"), Pa. Cons. Stat. §§ 5301 et seq. (Count III), unfair competition (Count IV), and conversion (Count V). (Cplt. ¶¶ 25-57.) On September 20, 2011, PPC filed a motion seeking dismissal of Counts II, IV, and V for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) and an order requiring DPPO to file a more definite statement as to Counts I and III under Federal Rule of Civil Procedure 12(e). (ECF No. 7.) On October 11, 2011, DPPO filed a response to PPC's motion. (ECF No. 8.) On October 18, 2011, PPC filed a reply in further support of its motion. (ECF No. 9.)

**III. The Parties' Contentions**

PPC argues that DPPO's common law tort claims for misappropriation of confidential and proprietary information, unfair competition, and conversion should be dismissed because they are preempted by PUTSA and barred by the gist of the action and economic loss doctrines. Moreover, PPC argues that DPPO should be required to file an amended complaint that contains

a more definite statement of the timing of the alleged misconduct supporting its breach of contract claim and its claim for violation of PUTSA.

In response, DPPO contends that it is premature for the Court to decide whether PUTSA preempts DPPO's claims for misappropriation of confidential and proprietary information, unfair competition, and conversion on a motion to dismiss. DPPO also contends that it is premature for the Court to decide whether these claims are barred by the gist of the action and economic loss doctrines on a motion to dismiss, and in any event, these doctrines are inapplicable because DPPO's common law torts claims are extraneous to the contract. DPPO further contends that PPC's motion for a more definite statement should be denied because it is not required to plead specific allegations regarding the timing of the alleged misconduct under the Federal Rules of Civil Procedure.

## IV. Legal Standards

### A. Jurisdiction

This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332 because the parties are citizens of different states and the amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

### B. Standard of Review

#### 1. Motion to Dismiss for Failure to State a Claim

A claim may be dismissed under Rule 12(b)(6) of the Federal Rules of Civil Procedure for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A valid complaint requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2).

Generally, a district court may consider only facts alleged in the complaint and its attachments on a motion to dismiss. Jordan v. Fox, Rothschild, O'Brien & Frankel, 20 F.3d 1250, 1261 (3d Cir.1994). The court may also take into consideration a "document integral to or explicitly relied upon in the complaint." In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997) (emphasis in original).[1]

The Third Circuit has held that a district court must conduct a two-part analysis to determine whether a claim survives a motion to dismiss. Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009). First, the court must distinguish between the factual and legal elements of the claim. Id. at 210–11. The court must accept as true the plaintiff's well-pled allegations and construe the complaint in the light most favorable to the plaintiff, Common Cause of Pa. v. Pennsylvania, 558 F.3d 249, 253 (3d Cir.2009) (citing Lewis v. Atlas Van Lines, Inc., 542 F.3d 403, 405 (3d Cir.2008)), but not "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," Fowler, 578 F.3d at 210 (quoting Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009)). Second, the court must inquire whether the complaint states a plausible claim to relief. Id. at 211 (citing Iqbal, 129 S.Ct. at 1950). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable

---

[1]PPC attached copies of the Confidentiality Agreement and the Consulting Agreement to its motion to dismiss. In response to the motion, DPPO submitted a declaration of one John Brophy, attaching pre-litigation correspondence between DPPO's and PPC's personnel. In ruling on the motion to dismiss, the Court will consider copies of the Confidentiality Agreement and the Consulting Agreement because DPPO explicitly relied upon those documents in the complaint. See Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993) (holding that a court may consider "an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document"). Because the Court does not rely on the pre-litigation correspondence in ruling on the motion to dismiss, the Court need not determine whether it may properly consider the pre-litigation correspondence at this time.

inference that the defendant is liable for the misconduct alleged." Iqbal, 129 S.Ct. at 1950 (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 556 (2007)).

**2. Motion for a More Definite Statement**

Under Rule 12(e) of the Federal Rules of Civil Procedure, "[a] party may move for a more definite statement of a pleading to which a responsive pleading is allowed but which is so vague or ambiguous that the party cannot reasonably prepare a response." Fed. R. Civ. P. 12(e). "The Rule 12(e) 'motion shall point out the defects complained of and the details desired.'" Thomas v. Independence Twp., 463 F.3d 285, 301 (3d Cir. 2006) (quoting Fed. R. Civ. P. 12(e)). "When presented with an appropriate Rule 12(e) motion for a more definite statement, the district court shall grant the motion and demand more specific factual allegations from the plaintiff concerning the conduct underlying the claims for relief." Id.

In general, "a motion for a more definitive statement is generally disfavored, and is used to provide a remedy for an unintelligible pleading rather than as a correction for a lack of detail." Frazier v. SEPTA, 868 F. Supp. 757, 763 (E.D. Pa. 1996); see also Country Classics at Morgan Hill Homeowners' Ass'n v. Country Classics at Morgan Hill, LLC, 780 F. Supp. 2d 367, 371 (E.D. Pa. 2011) ("Because Federal Rule of Civil Procedure 8 requires only a short and plain statement of the claim, motions for a more definite statement are 'highly disfavored'"). "[I]t is directed to the rare case where because of the vagueness or ambiguity of the pleading the answering party will not be able to frame a responsive pleading." Schaedler v. Reading Eagle Publ'n, Inc., 370 F.2d 795, 798 (3d Cir. 1967). Ultimately, however, "the decision to grant a motion for a more definite statement is committed to the discretion of the district court." Woodard v. FedEx Freight East, Inc., 250 F.R.D. 178, 182 (M.D. Pa. 2008); accord MK

Strategies, LLC v. Ann Taylor Stores Corp., 567 F. Supp. 2d 729, 737 (D.N.J. 2008).

## V. Discussion

### A. PUTSA Preemption

Initially, PPC contends that DPPO's common law tort claims for misappropriation, unfair competition, and conversion should be dismissed because they are preempted by PUTSA. In response, DPPO contends that it is premature for the Court to decide whether PUTSA preempts these claims on a motion to dismiss.

"PUTSA creates a statutory cause of action for injunctive relief, compensatory damages and exemplary damages for the actual loss caused by misappropriation of trade secrets and the unjust enrichment caused by such misappropriation." Youtie v. Macy's Retail Holding, Inc., 626 F. Supp. 2d 511, 522 (E.D. Pa. 2009). PUTSA "displaces conflicting tort, restitutionary and other law of this Commonwealth providing civil remedies for misappropriation of a trade secret," with the exception of "(1) contractual remedies, whether or not based upon misappropriation of a trade secret; (2) other civil remedies that are not based upon misappropriation of a trade secret; or (3) criminal remedies, whether or not based upon misappropriation of a trade secret." 12 Pa. Cons. Stat. Ann. § 5308(a)-(b). Therefore, unless a claim falls within one of these exceptions, it is preempted by PUTSA to the extent it is based on the same conduct that constitutes a misappropriation of trade secrets. Youtie, 626 F. Supp. 2d at 521.

Under PUTSA, a person has misappropriated a trade secret "when he acquires knowledge of another's trade secret in circumstances giving rise to a duty to maintain its confidentiality and then discloses or uses that trade secret without the other's consent." Bimbo Bakeries USA, Inc. v. Botticella, 613 F.3d 102, 110 (3d Cir. 2010) (citing 12 Pa. Cons. Stat. Ann. § 5302). PUTSA

defines a "trade secret" as: "Information, including a formula, drawing, pattern, compilation including a costumer list, program, device, method, technique or process that: (1) Derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use. (2) Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy." 12 Pa. Cons. Stat. Ann. § 5302.

Pennsylvania courts look to the following factors to determine whether information is protected as a trade secret: "(1) the extent to which the information is known outside of the company's business; (2) the extent to which the information is known by employees and others involved in the company's business; (3) the extent of the measures taken by the company to guard the secrecy of the information; (4) the value of the information to the company and its competitors; (5) the amount of effort or money the company spent in developing the information; and (6) the ease or difficulty with which the information could be acquired or duplicated legitimately by others." Bimbo Bakeries, 613 F.3d at 109.[2] Whether information rises to the level of a trade secret under PUTSA is a question of fact. Council for Educ. Travel, USA v. Czopek, No. 1:11-CV-00672, 2011 WL 3882474, at *5 (M.D. Pa. Sept. 2, 2011); Bro-Tech Corp. v. Thermax, Inc., 651 F. Supp. 2d 378, 410 (E.D. Pa. 2009).

At this juncture, the Court is unable to determine whether the alleged misappropriated information rises to the level of a trade secret. To be sure, there has been no discovery on the

---

[2]"PUTSA displaced Pennsylvania's common law tort for misappropriation of trade secrets, but there is no indication that the statute effected a substantive shift in the definition of 'trade secret.'" Bimbo Bakeries USA, Inc. v. Botticella, 613 F.3d 102, 109 n.7 (3d Cir. 2010) (quoting Youtie v. Macy's Retail Holding, Inc., 626 F. Supp. 2d 511, 522 n.10 (E.D. Pa. 2009)).

matter. See Hecht v. BabyAge.com, Inc., No. 3:10-CV-724, 2010 WL 3940882, at *5 (M.D. Pa. Oct. 6, 2010) (declining to decide PUTSA preemption issue on motion to dismiss because "the existence of a trade secret" is a "determination [that] requires discovery"). As a result, the parties could not even properly brief the issue. See Youtie, 626 F. Supp. 2d at 523 (declining to decide PUTSA preemption issue on motion for summary judgment because "neither party [] properly briefed whether this information qualifies as a trade secret").

The vast majority of courts to have addressed whether PUTSA preempts common law tort claims on a motion to dismiss have determined that such a determination is inappropriate in such circumstances. See, e.g., Council for Educ. Travel, 2011 WL 3882474, at *7 n.4 (interference with existing and prospective contractual relations); EXL Labs., LLC v. Egolf, No. 10-CV-6282, 2011 WL 880453, at *7-*8 (E.D. Pa. Mar. 11, 2011) (conversion); Hecht, 2010 WL 3940882, at *5 (unfair competition, breach of duty of loyalty, and breach of fiduciary duty); Partners Coffee Co. v. Oceana Servs. & Prods. Co., No. 09-CV-236, 2009 WL 4572911, at *11 (W.D. Pa. Dec. 4, 2009) (improper procurement of information); Ideal Aerosmith, Inc. v. Acutronic USA, Inc., 07-CV-1029, 2008 WL 1859811, at *6 (W.D. Pa. Apr. 23, 2008) (unfair competition and civil conspiracy); Weiss v. Fiber Optic Designs, Inc., No. 06-CV-5258, 2007 WL 3342605, at *1 (E.D. Pa. Nov. 9, 2007) (duty of loyalty, interference with existing and prospective business advantage, and unfair competition); Cenveo Corp. v. Slater, No. 06-CV-2632, 2007 WL 527720, at *3-*4 (E.D. Pa. Feb. 12, 2007) (conversion); Roger Dubois N. America, Inc. v. Thomas, No. 3:05-CV-2566, 2006 WL 2645149, at *4 (M.D. Pa. Sept. 14, 2006) (conversion). But see Power Contracting, Inc. v. Stirling Energy Sys., Inc., No. 2:09-CV-00970, 2010 WL 4854072, at *5-*6 (W.D. Pa. Nov. 22, 2010) (preempting common law misappropriation claim on motion to

dismiss).

In this case, determining whether DPPO's common law tort claims are preempted at this stage of the litigation "risks leaving the claimant [] without a remedy for information he proves has been stolen." Cenveo Corp., 2007 WL 527720, at *4. If the Court were to dismiss DPPO's common law tort claims on preemption grounds and later find that PPC misappropriated DPPO's confidential information, even though that information did not rise to the level of a trade secret under PUTSA, "the Court would be in the difficult position of telling the plaintiff that it had no remedy." Id.; see also EXI Labs., 2011 WL 880453, at *8 ("If we dismiss Plaintiff's conversion claim, and later determine that Plaintiff's confidential information does not constitute trade secrets, we risk leaving Plaintiff without a remedy.").

Moreover, determining whether DPPO's common law tort claims are preempted at this juncture "would require the court to make a determination that [PPC's] conduct constitutes misappropriation and that the misappropriated information at issue [is] a trade secret." Weiss, 2007 WL 3342605, at *1. Such a determination would be inappropriate at this stage of the litigation without discovery or the benefit of briefing on the issue. Therefore, the Court declines to determine whether DPPO's claims for misappropriation, unfair competition, and conversion are preempted under PUTSA.[3]

**B. Gist of the Action and Economic Loss Doctrines**

Next, PPC contends that DPPO's common law tort claims for misappropriation, unfair

[3]PPC contends that Power Contracting, Inc. v. Stirling Energy Sys., Inc., No. 2:09-CV-00970, 2010 WL 4854072 (W.D. Pa. Nov. 22, 2010) – seemingly the only case in which a court applying Pennsylvania law has determined that alleged common law tort claims were preempted under PUTSA on a motion to dismiss – warrants a different result. Because the Court finds the majority view persuasive, it declines PPC's invitation to follow Power Contracting.

competition, and conversion should be dismissed because they are barred by the gist of the action and economic loss doctrines. In response, DPPO contends that it is premature to decide whether these claims are barred by the gist of the action and economic loss doctrines on a motion to dismiss, and in any event, these doctrines are inapplicable because DPPO's torts claims are extraneous to the contract.

As the Third Circuit has recognized, "Pennsylvania courts use two methods to determine whether tort claims that accompany contract claims should be allowed as freestanding causes of action or rejected as illegitimate attempts to procure additional damages for a breach of contract: the 'gist of the action' test and the 'economic loss doctrine' test." Bohler-Uddeholm America, Inc. v. Ellwood Group, Inc., 247 F.3d 79, 103 (3d Cir. 2001). Although the Pennsylvania Supreme Court has yet to explicitly adopt either doctrine,[4] both doctrines have considerable support from Pennsylvania appellate courts. See, e.g., Reardon v. Allegheny Coll., 926 A.2d 477, 486-87 (Pa. Super. Ct. 2007) (applying gist of the action doctrine to bar negligence claim); eToll, Inc. v. Elias/Savion Adver., Inc., 811 A.2d 10, 20-21 (Pa. Super. Ct. 2002) (same with respect to fraud claims); N.Y. State Elec. & Gas Corp. v. Westinghouse Elec. Corp., 564 A.2d 919, 925-26 (Pa. Super. Ct. 1989) (en banc) (applying economic loss doctrine to bar negligence and strict liability claims); REM Coal Co. v. Clark Equip. Co., 563 A.2d 128, 134 (Pa. Super. Ct. 1989) (en banc) (same). Accordingly, the Third Circuit has predicted that the Pennsylvania Supreme Court would adopt both the gist of the action and the economic loss doctrines. See

---

[4]The Pennsylvania Supreme Court has, however, recognized the existence of the economic loss doctrine, see Excavation Techs., Inc. v. Columbia Gas Co. of Pa., 985 A.2d 840, 842-43 (Pa. 2009), and held that, at least in some circumstances, the doctrine does not bar a cause of action for negligent misrepresentation, see Bilt-Rite Contractors, Inc. v. Architectural Studio, 866 A.2d 270, 285 (Pa. 2005).

Pediatrix Screening, Inc. v. TeleChem Int'l, Inc., 602 F.3d 541, 548 (3d Cir. 2010); Bohler-Uddeholm, 247 F.3d at 103-04 & n.10; Duquesne Light Co. v. Westinghouse Elec. Corp., 66 F.3d 604, 619 (3d Cir. 1995); King v. Hilton-Davis, 855 F.2d 1047, 1053-54 (3d Cir. 1988).

The gist of the action doctrine "precludes plaintiffs from recasting ordinary breach of contract claims into tort claims." Jones v. ABN Amro Mortg. Group, Inc., 606 F.3d 119, 123 (3d Cir. 2010) (quoting Erie Ins. Exch. v. Abbott Furnace Co., 972 A.2d 1232, 1238 (Pa. Super. Ct. 2009)). "The critical conceptual distinction between [these claims] is that the former arises out of 'breaches of duties imposed by mutual consensus agreements between particular individuals,' while the latter arises out of 'breaches of duties imposed by law as a matter of social policy.'" Id. (quoting Erie Ins. Exch., 972 A.2d at 1238 (quoting Reardon, 926 A.2d at 486-87)). Therefore, "[t]he focus of an analysis under the 'gist of the action' doctrine is whether 'actions lie from a breach of duties imposed as a matter of social policy' or 'from the breach of duties imposed by mutual consensus.'" Toledo Mack Sales & Serv., Inc. v. Mack Trucks, Inc., 530 F.3d 204, 229 (3d Cir. 2008) (quoting Redevelopment Auth. of Cambria County v. Int'l Ins. Co., 685 A.2d 581, 590 (Pa. Super. Ct. 1995)).

The economic loss doctrine operates similarly to the gist of the action doctrine. The economic loss doctrine "prohibits plaintiffs from recovering in tort economic losses to which their entitlement flows only from contract." Werwinski v. Ford Motor Co., 286 F.3d 661, 671 (3d Cir. 2002) (quoting Duquesne Light Co. v. Westinghouse Elec. Corp., 66 F.3d 604, 618 (3d Cir. 1995)). Like the gist of the action doctrine, the economic loss doctrine is designed to "maintain[] the separate spheres of the law of contract and tort." Duquesne Light, 66 F.3d at 620 (quoting N.Y. State Elec. & Gas, 564 A.2d at 925). Thus, under the economic loss doctrine, "a

plaintiff is limited to a contract claim 'when loss of the benefit of a bargain is the plaintiff's sole loss.'" Bohler-Uddeholm, 247 F.3d at 104 (quoting Duquesne Light, 66 F.3d at 618).

The distinction between the gist of the action and economic loss doctrines is largely one of pedigree. The economic loss doctrine "developed in the context of courts' precluding products liability tort claims in cases where one party contracts for a product from another party and the product malfunctions, injuring only the product itself." Bohler-Uddeholm, 247 F.3d at 104 n.11 (citing East River S.S. Corp. v. Transamerica Delaval, Inc., 476 U.S. 858, 866-71 (1986); Duquesne Light, 66 F.3d at 618-20). Thus, the gist of the action doctrine is generally "a better fit" for non-products liability cases, like the case at bar. Pediatrix Screening, 602 F.3d at 544 n.5; Bohler-Uddeholm, 247 F.3d at 104 n.11.

Courts applying the gist of the action doctrine to tort claims similar to those brought by DPPO in this case have not been entirely uniform in their application. See, e.g., Toledo Mack, 530 F.3d at 229 (permitting misappropriation claim); Bohler-Uddeholm, 247 F.3d at 106-07 (explaining that misappropriation claim was potentially barred); Integrated Waste Solutions, Inc. v. Goverdhanam, No. 10-CV-2155, 2010 WL 4910176, at *14 (E.D. Pa. Nov. 30, 2010) (permitting conversion claim); Brown & Brown, Inc. v. Cola, 745 F. Supp. 2d 588, 622-25 (E.D. Pa. 2010) (permitting certain misappropriation and conversion claims but barring other misappropriation and conversion claims); Partners Coffee Co. v. Oceana Servs. & Prods. Co., No. 09-CV-236, 2009 WL 4572911, at *6-*7 (W.D. Pa. Dec. 4, 2009) (permitting certain allegations of conversion claim but barring others); Rahemtulla v. Hassam, 539 F. Supp. 2d 755, 777-78 (M.D. Pa. 2008) (barring conversion claim); FedEx Ground Package Sys., Inc. v. Applications Int'l Corp., No. 03-CV-1512, 2008 WL 4279751, at *10-*12 (W.D. Pa. Sept. 12,

2008) (permitting misappropriation claim, but barring conversion claim); Murphy v. Mid East Oil Co., No. 06-CV-1343, 2007 WL 527715, at *5-*6 (W.D. Pa. Feb. 14, 2007) (barring misappropriation and conversion claims); Jodek Charitable Trust, R.A. v. Vertical Net Inc., 412 F. Supp. 2d 469, 479-80 (E.D. Pa. 2006) (barring conversion claim); TruePosition, Inc. v. Sunon, Inc., No. 05-CV-3023, 2006 WL 1451496, at *3 (E.D. Pa. May 25, 2006) (permitting unfair competition claim); cf. Samson Lift Tech., LLC v. Jerr-Dan Corp., No. 09-CV-1590, 2010 WL 1052932, at *8 (M.D. Pa. Mar. 22, 2010) (barring unfair competition claim under economic loss doctrine).

In this case, there appears to be great deal of potential overlap among DPPO's contract claim and its various tort claims, including the PUTSA claim discussed above. However, PPC has not explicitly asserted that the gist of the action doctrine requires DPPO to proceed exclusively in contract, implying that the PUTSA claim survives the gist of the action doctrine.

At this stage of the litigation, the Court declines to determine whether the gist of the action doctrine bars any of DPPO's tort claims. "Caution must be exercised in dismissing a tort action on a motion to dismiss because whether tort and contract claims are separate and distinct can be a factually intensive inquiry." Haymond v. Lundy, Nos. 99-CV-5015, 99-CV-5048, 2000 WL 804432, at *8 (E.D. Pa. June 22, 2000); accord Baker v. Family Credit Counseling Corp., 440 F. Supp. 2d 392, 418 (E.D. Pa. 2006). Courts have declined to apply the gist of the action doctrine on a motion to dismiss in similar circumstances. See, e.g., Sensus USA, Inc. v. Elliott Bay Eng'g, Inc., No. 10-CV-1363, 2011 WL 2650028, at *7 (W.D. Pa. July 6, 2011) ("Because the application of the gist of the action doctrine depends on the facts of each particular case and . . . the nature of the relevant trade secrets in this case is currently unclear, this issue is best left for

resolution on a post-amendment motion to dismiss or, even more appropriately, on a post-discovery motion for summary judgment."); Orthovita, Inc. v. Erbe, No. 07-CV-2395, 2008 WL 423446, at *5 (E.D. Pa. Feb. 14, 2008) ("At this juncture in the litigation, it is too soon to know whether the common law or statutory prohibition against misappropriation will address a broader scope of Orthovita secrets or greater duties than the contract obligation."); Freedom Med., Inc. v. Gillespie, 634 F. Supp. 2d 490, 517 (E.D. Pa. 2007) (refusing to dismiss misappropriation of trade secrets claim because the allegations "could, depending on the facts ultimately proved, give rise to independent duties to refrain from disclosing or misappropriating trade secrets"); Berger & Montague, P.C. v. Scott & Scott, LLC, 153 F. Supp. 2d 750, 754 (E.D. Pa. 2001) (noting that even if the gist of the action and economic loss doctrines barred conversion claim, "Federal Rule of Civil Procedure 8(d)(2) allows [plaintiff] to plead two or more alternative claims . . . for either breach of contract or conversion, regardless of their consistency").

Here, the appropriate course of action is for the Court to deny the pending motion to dismiss, but to note that the gist of the action doctrine may require the Court, prior to trial, to rule definitively on its application in this case. DPPO shall initiate discovery, as may be appropriate, on all its claims. The Court does not believe that ruling on the gist of the action doctrine now would eliminate any discovery that would be appropriate on the breach of contract claim, and thus PPC is not prejudiced by the Court delaying ruling on its assertion of the gist of the action doctrine.

However, the Court will require DPPO, at the close of discovery, on a date to be set at a pretrial conference to be held under Rule 16 of the Federal Rules of Civil Procedure, to specify

on which claims it intends to proceed to trial, prior to PPC filing any dispositive motion. If DPPO indicates a desire to proceed on its tort claims, then the Court will, with the benefit of the fruits of discovery, be more informed to rule on the gist of the action doctrine, and any other issues.

Accordingly, the Court will deny PPC's motion to dismiss.

**C. Motion for More Definite Statement**

Last, PPC moves for an order, pursuant to Rule 12(e) of the Federal Rules of Civil Procedure, requiring DPPO to file an amended complaint that contains a more definite statement of the factual allegations – specifically, the timing of the alleged misconduct – supporting its breach of contract claim and its claim for violation of PUTSA. According to PPC, these claims are potentially barred by the applicable statute of limitations, but because the complaint does not include any allegations concerning the timing of the alleged misconduct, PPC cannot reasonably prepare a statute of limitations defense. In response, DPPO contends that it is not required to plead specific allegations regarding the timing of the alleged misconduct under the Federal Rules of Civil Procedure.

In addressing motions for a more definite statement as to the timing of alleged acts underlying a claim in a complaint, courts within the Third Circuit have reached different outcomes depending on the circumstances of a given case. Typically, courts have granted such motions in cases in which the timing of the alleged acts would help a defendant frame a defense and increase the efficiency with which the dispute between the parties could be resolved. See, e.g., Lynch v. Ramsey, 10-CV-3436, 2010 WL 4400027, at *6 (E.D. Pa. Nov. 4, 2010) (granting request to provide dates of alleged unlawful searches and seizures in civil rights action); Evans v.

Port Authority of N.Y. & N.J., 06-CV-3239, 2007 WL 3071808, at *14 (D.N.J. Oct. 18, 2007) (granting request to provide dates of alleged discriminatory acts in civil rights action). On the other hand, courts have denied motions for a more definite statement in cases in which the timing of the alleged acts underlying a claim was the proper subject of discovery. Mutual Indus., Inc. v. Am. Int'l Indus., No. 11-CV-5007, 2011 WL 4836195, at *3 (E.D. Pa. Oct. 11, 2011) (denying request to provide dates of defendant's purchase of company and alleged contacts with third parties underlying claim for tortious interference with contractual relations); Conklin v. Warrington Twp., 1:06-CV-2245, 2008 WL 2704629, at *15 (M.D. Pa. July 7, 2008) (denying request to specify timing of alleged constitutional violations); Copper Seven, Inc. v. G.D. Searle & Co., No. 87-3430 (AMW), 1988 WL 30187, at *3 (D.N.J. Mar. 29, 1988) (denying request to identify approximate dates of allegedly incorrect payments made by defendant underlying breach of contract claim).

In this case, DPPO alleges that PPC breached its contractual obligations to DPPO and misappropriated its trade secrets by incorporating language similar to the Confidential Information that DPPO disclosed to PPC in certain benefits plan documents while acting as a third-party administrator for a health plan. (Cplt. §§ 17, 25, 34.) DPPO alleges that these acts took place some time after December 20, 2007 – the date on which the Consulting Agreement between DPPO and PPC was executed. (Cplt. § 11.) However, DPPO does not provide more specific details concerning the timing of these acts.

Significantly, it is unclear to the Court that DPPO would even have knowledge of the precise dates on which the alleged acts underlying its breach of contract and PUTSA claims occurred because these acts concern transactions between PPC and a third party, not transactions

involving DPPO. Indeed, this information might very well be in the exclusive possession of PPC and, thus, could most reasonably be ascertained through discovery. See Mut. Indus., 2011 WL 4836195, at *3 (denying motion for more definite statement because timing of events underlying claim for tortious interference with business relations constituted information "properly sought through discovery"); Steinberg v. Guardian Life Ins. Co., 486 F. Supp. 122, 123 (E.D. Pa. 1980) (denying motion for more definite statement where "[a]dditional information may be obtained from the discovery procedures").

Moreover, the allegations underlying DPPO's claims for breach of contract and violation of PUTSA are not so vague or ambiguous that PPC cannot reasonably frame a response. Indeed, DPPO has provided a general time frame within which the alleged acts took place and is not required to provide more specific details to allow PPC to move for further relief at this time. See Conklin, 2008 WL 2704629, at *15 ("[T]he Federal Rules of Civil Procedure impose no burden upon a plaintiff to recite in his or her complaint the dates on which the alleged harms occurred.); Jairett v. First Montauk Sec. Corp., 203 F.R.D. 181, 186 (E.D. Pa. 2001) (noting that the Federal Rules of Civil Procedure "do[ ] not require specificity in pleading time and place"). Although PPC may not be able to determine with certainty whether a limitations defense is viable, the allegations supporting DPPO's breach of contract and PUTSA claims are sufficient to allow PPC to raise such a defense in a responsive pleading to the complaint. Rule 12(e) does not entitle PPC to anything more at this stage of the litigation. See Mutual Indus., 2011 WL 4836195, at *3 (noting that a motion for a more definite statement "should not be used to seek out a threshold defense" (citing Argonaut Ins. Co. v. HGO, Inc., 96-CV-1115, 1996 WL 433564, at *2 (E.D. Pa. July 25, 1996)).

Accordingly, the Court will deny PPC's motion for a more definite statement.

## VI. Conclusion

For the reasons set forth above, PPC's motion to dismiss for failure to state a claim and for a more definite statement is denied.

An appropriate order follows.

O:\CIVIL 11-12\11-4568 Kimberton Healthcare v Primary Healthcare\Kimberton Memo MTD.wpd